IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROSAELIA GARZA | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| UNITEDHEALTHCARE | § | |
| INSURANCE COMPANY | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

ROSAELIA GARZA, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against UnitedHealthcare Insurance Company, Defendant.

### I.
### PARTIES

1. Plaintiff, Rosaelia Garza ("Garza"), is a resident citizen of Mission, Texas.

2. Defendant, UnitedHealthcare Insurance Company ("United"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, CT Corporation System, 350 North St Paul Street, Dallas TX 75201, or wherever it may be found.

### II.
### JURISDICTION AND VENUE

3. This action against United and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2)

because Defendants maintain business activity in and may be found in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

6. Rosaelia Garza was hired by Star Channel Communications, Inc. ("Star Channel") in 1996. She worked there for 16 years, becoming a national sales executive. As a full time employee, Ms. Garza was enrolled in Star Channel's employee welfare benefit Plan that included benefits for long term disability (LTD).

7. Star Channel's LTD Plan was part of the company's Group Insurance Policy issued by United. The LTD Policy Number was G/GA4K3092IM (the "Policy"). The Policy provided income protection if the covered employee became disabled as a result of injury or sickness. Ms. Garza was an eligible employee.

8. Star Channel is the Plan Sponsor and Plan Administrator.

9. United was the Insurer and Claims Administrator for the Plan.

10. Ms. Garza was a hard worker who loved her job. She was able to get a high paying position at Star Channel despite having nothing more than a GED. For years, she dealt with back pain, leg cramps, tingling in the hands and feet, abdominal pain, throbbing neck and shoulder pain, depression, and sensitivity to temperature changes. Those conditions did not prevent her from being the most successful salesperson on the staff.

11. In 2011, Ms. Garza began getting easily fatigued and having trouble with concentration. She would be late to work or leave early. She delayed client deadlines so that she could complete the needed tasks. She would skip taking medication just to have more energy. Her work product suffered, and her immediate supervisor and GM realized something was wrong.

12. Ms. Garza resigned from her job on June 6, 2012 after her own physician, Dr. Elvin Garcia, recommended that she do so.

13. Ms. Garza filed for LTD benefits on June 8, 2012.

14. United approved Ms. Garza's LTD claim and approved her benefits beginning on July 7, 2012.

15. On July 6, 2012, Dr. Garcia noted "at this point [Garza] is unable to carry [a] job or manage any house on her own".

16. On August 8, 2012, a United representative spoke with Ms. Garza by phone. Ms. Garza was informed that she needed to apply for Social Security Disability Income ("SSDI") benefits. If she did not apply, United would estimate the amount to which she might be entitled and use it as an offset to her LTD benefits.

17. On August 17, 2012, Dr. Garcia provided an Attending Physician Statement to United. In that statement, he advised that Ms. Garza had no full time work capacity. He also noted that the disability "is permanent and may last many months".

18. On September 5, 2012, a United representative spoke with Emmitt Wells, general manager at Star Channel, by phone. Mr. Wells advised that Ms. Garza was one of the best sales people he had and that before she was sick she would be in the office

calling the East Coast by 8 a.m. and stay late to call the West Coast. He noted that her issues became most noticeable in the past year. He also noted despite her decline in sales, he wanted to help her get through those issues.

19. On October 23, 2012, United approved Ms. Garza's LTD claim. However, it limited approval of the claim to the Policy's 24 month limitation for mental illnesses. Specifically, United concluded that Ms. Garza suffered from major depressive disorder. Benefits were thus expected to terminate in September 2014.

20. United's policy defined disability as, among other things, a condition in which the beneficiary is "unable to perform some or all of the material and substantial duties of his regular occupation" during the first 24 months of disability. This provision is commonly known as "own occupation" disability. After the first 24 months of disability, disability is defined as being "unable to perform some or all of the material and substantial duties of any gainful occupation". This is commonly known as "any occupation" disability.

21. On December 12, 2012, United employee Dalton Hobbs spoke with Ms. Garza by phone. Ms. Garza expressed her concern with the limited approval of her claim based on mental illness and explained that she suffered from fibromyalgia. Mr. Hobbs advised that United was looking at both diagnoses. He also mentioned that if Ms. Garza still had a supported physically impairing condition after 24 months, her LTD benefits would continue.

22. In March 2013, Ms. Garza advised United that she had been approved for SSDI benefits. United began taking an offset to Ms. Garza's LTD benefits.

23. In February 2013, Ms. Garza underwent surgery on her left shoulder.

24. On March 27, 2013, a United representative spoke with Ms. Garza by phone. The United representative noted that the primary condition keeping her from returning to work was fibromyalgia, with secondary conditions of depression, migraine headaches, TMJ, osteoporosis, and the side effects of her medications.

25. An MRI of the upper abdomen taken in June 2013 showed evidence of gallstones.

26. In September 2014, the Policy's disability definition changed from "own occupation" to "any occupation". United continued to pay Ms. Garza's LTD claim.

27. On January 13, 2015, United terminated Ms. Garza's LTD claim. It concluded that the Policy's 24 month limitation for mental illnesses applied to her claim because Ms. Garza suffered from major depressive disorder.

28. In terminating Ms. Garza's claim, United relied on a medical record review by one of its employees, Dr. John LoCascio. Dr. LoCascio listed 22 different medical conditions for which Ms. Garza had been diagnosed, as well as 16 different medications for which she had been prescribed. However, he determined that there was a "lack of objective medical data" supporting her disability. Dr. LoCascio also concluded that Ms. Garza would be physically able to do sedentary or light work.

29. However, Dr. LoCascio lacked the training, education, or experience to reach those conclusions. He has an inactive medical license in Massachusetts. He has no medical license in Texas.

30. Dr. LoCascio's work background reveals his lack of experience with actual patients. Since 1991, Dr. LoCascio has simply bounced between jobs for insurance companies. He worked Unum Life Insurance from 1991 to 2005. From 2005 to 2012, he worked

for Prudential. He has worked at United since 2012.

31. There is no evidence that Dr. LoCascio has worked as active staff in any hospital in 25 years. Instead, he has been a faithful and active member of the American Academy of Insurance Medicine ("AAIM") since 1990, a year before he even began employment in the insurance industry[1]. His background reveals his bias. United knew of this bias but still persisted in its reliance on Dr. LoCascio's opinions.

32. On information and belief, Dr. LoCascio's principal role as a medical director is to find a basis for denying a claim.

33. In terminating Ms. Garza's claim, United also relied on a defense medical examination by a Dr. Priti Manohar. The examination took place on October 2, 2014. Dr. Manohar's opinions about Ms. Garza's condition were based on less than 5 minutes with Ms. Garza. Much of the time was spent discussing how Ms. Garza should seek "spiritual" support and pray to God to be able to work again. The medical summary prepared by Dr. Manohar's nurse was inaccurate. Dr. Manohar's opinions of Ms. Garza's disability were based on incorrect information and a cursory exam.

34. United's termination of Ms. Garza's claim was also based on an Employability Analysis Report by United employee Rebecca Geary. Ms. Geary concluded that Ms. Garza had no physical limitations at all and that she could work in her own occupation.

35. Ms. Garza promptly appealed United's termination of her claim on July 9, 2015. She submitted additional evidence and medical records on July 14, 15, and 21, 2015.

---

[1] The AAIM limits its membership to physicians who are medical directors of insurance companies, nurses, underwriters, medical consultants, and other professional members in insurance.

36. On September 22, 2015, United denied Ms. Garza's appeal. In doing so, United concluded that there was no evidence of any physical impairment from January 1, 2015 onwards.

37. On January 5, 2016, Ms. Garza submitted additional evidence in support of her claim. Among other things, she pointed out the relationship between United and University Disability Consortium ("UDC"), the medical record review company it hired to review Ms. Garza's records. She also submitted additional information about her restrictions and limitations, her daily routine, and her defense medical examination with Dr. Manohar. She requested that United review those records and include them as part of her claim file.

38. On January 22, 2016, Ms. Garza submitted additional evidence from her treating physicians. She requested that United review those records and include them as part of her claim file.

39. In January 2016, United advised that it would not conduct any further review of Ms. Garza's claim and that its determination was final.

40. United's failure to review or consider the supplemental documents provided by Ms. Garza in January 2016, less than 4 months after its denial of her appeal, violated the Fifth Circuit's holding in *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir. 1999). It also violated United's fiduciary duty to Ms. Garza.

41. Having exhausted her administrative remedies, Rosaelia Garza brings this action to recover the LTD benefits promised in the Policy and the Plan.

## IV.
## CLAIMS & CAUSE OF ACTION

42. United is an insurer and provided LTD coverage to Ms. Garza in accordance with the terms of the Policy. That coverage included LTD benefits arising out of her disability.

43. The Policy, as part of the Star Channel Group Long Term Disability Plan, is governed by ERISA. 29 U.S.C. §1001, *et. seq.* United is the Claims Administrator and a named fiduciary under the Plan.

44. As a Plan fiduciary, United is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

45. United's adjustment or "adjudication" of the Garza claim was instead biased and outcome oriented. This was in part reflected by its termination of the Garza claim, even after being presented with evidence of her ongoing disability. It was also reflected in United's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively review her claim. Relying on the biased opinions of Dr. LoCascio and Dr. Manohar was a breach of United's fiduciary duty to fully, fairly and objectively investigate, evaluate, adjust and pay or deny claims in good faith.

46. United's interpretation of the Policy and the terms of the Policy was not legally correct. It was also contrary to a plain reading of the Policy language.

47. United's interpretation of the Policy and Policy language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Policy terms. Alternatively, the Policy language upon which United based its denial decision was ambiguous. The ambiguous nature of those

terms require those terms be construed against United and in favor of coverage for the beneficiary.

48. United's denial was made without substantial supporting evidence. Its decision to deny the Garza claim was instead based upon rank speculation and guesswork. United's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

49. On information and belief, United's denial of the Garza claim was not the result of a honest, fair, or objective factual investigation. It was instead motivated by United's desire for financial gain, evidenced by policies, procedures, and practices to profit from the delay in payment or denial of claims. It may also be found in various incentive programs for claims and claims management personnel and in various management directives. Its financial gain is also reflected in the high ROE United gains from retained benefit funds.

50. At all material times, United was acting on behalf of the Plan and in its own capacity as the insurer and Claims Administrator.

51. United's denial of the Garza claim breached the terms of the Policy and the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1), entitling Garza to the LTD Policy to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Ms. Garza now sues.

## V.
## STANDARD OF REVIEW

52. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion

standard of review may apply.

53. The Policy may contain a discretionary clause or language United may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Policy, and determine the facts. United's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

54. If discretion applies, the Court should afford United less deference in light of its financial conflict of interest. United's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of the Garza benefit claim and as the potential payor of that claim.

55. United's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. United's financial conflict is also revealed in the high ROE gained from the delay in payment or denial of claims.

56. Each of these grounds, on information and belief, was a motive to deny the Garza claim, along with the delay in payment or denial of claims of other United policyholders and claimants.

57. United, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

58. Alternatively, the standard of review of this claim should be *de novo,* affording United no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

59. The Policy was delivered in Texas. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance

policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of the Garza claim and United's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

60. Garza requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

61. United's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Insurance Code. Garza thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

62. Garza seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

63. Rosaelia Garza, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendant

UnitedHealthcare Insurance Company, and issue judgment against Defendant as follows:

a. Pay to Ms. Garza all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

b. Pay all reasonable attorney's fees incurred and to be incurred by Ms. Garza in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

c. All such other relief, whether at law or in equity, to which Ms. Garza may show herself justly entitled.

          Respectfully submitted,

By: _/s/_____
James C. Plummer, TBA #16075700
Federal I.D. No. 3692
jplummer@plummerlawyers.com
Amar Raval, TBA # 24046682
S.D. I.D. No 619209
araval@plummerlawyers.com
**PLUMMER | RAVAL**
4203 Montrose Boulevard, Suite 270
Houston, Texas 77006
(713) 522-2887
(713) 522-3605 (Fax)

ATTORNEYS FOR PLAINTIFF